IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.  CRIMINAL CASE NO. 4:23-CR-72-SA

GAVIN HUGHES  DEFENDANT

ORDER

On August 6, 2023, Gavin Hughes filed a Motion to Compel [30]. The Government opposes Hughes' request. The Court, having reviewed the parties' filings and the applicable authorities, is now prepared to rule.

*Relevant Background*

On May 16, 2023, Hughes was charged in a two-count Indictment [8] filed in this Court. The two charges against Hughes are as follows:

**Count One**

> From a time unknown to the Grand Jury up until on or about the 9th day of April, 2023, in the Northern District of Mississippi, the defendant, GAVIN HUGHES[,] did combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to knowingly threaten to engage in conduct, namely murder and assault, which would cause bodily injury to Witness #1, with the intent to retaliate against Witness #1 for the attendance of the witness, testimony given, and a record produced by the witness in an official proceeding and for providing information relating to the commission and possible commission of a Federal Offense, in violation of Title 18, United States Code, Sections 1513(b)(1), (b)(2) and (f).

**Count Two**

> On or about the 9th day of April, 2023, in the Northern District of Mississippi, the defendant, GAVIN HUGHES[,] did knowingly threaten to engage in conduct, namely murder and assault, which would cause bodily injury to Witness #1, with the intent to retaliate against Witness #1 for the attendance of the witness, testimony given, and a record produced by the witness in an official proceeding

and for providing information relating to the commission and possible commission of a Federal Offense, in violation of Title 18, United States Code, Sections 1513(b)(1) and (2).

[8] at p. 1-2.

The victim in this case (referred to as "Witness #1" in the Indictment [8]) is a long-time confidential informant for the Greenville Police Department (hereinafter "the C.I."). As alleged in the Indictment [8], the C.I. recently testified in a criminal trial, and Hughes threatened him shortly thereafter—leading to the present charges against Hughes. Throughout his time working as an informant, the C.I. has admittedly received financial compensation from the Greenville Police Department. That financial compensation is the subject of the present Motion to Compel [30].

Hughes contends that, during discovery, the Government made the following disclosure regarding the C.I.:

> Related to the victim's role as a confidential informant, the government anticipates testimony will be that the informant entered into a cooperation agreement with law enforcement on August 22, 2016[.] Since that time to March 27, 2023, his cooperation led to the arrest of approximately thirty defendants. The confidential informant's cooperation has led to a number of convictions. In exchange for cooperation, the confidential informant initially worked off citations owed and then was financially compensated, ranging from approximately $100 to $500 per participated buy or by providing information to law enforcement. The range varied based upon the quality of the buy video and level of danger that the confidential informant was placed in after review by law enforcement.
>
> Further, given the concerns for the victim's wellbeing in this case, measures have been taken to protect him and the government has used funds to do so. This information is to provide notice of what may constitute Giglio/Brady material that the individual was relocated for protection. The government will use approximately $4,998.06 to move/house the witness.

[30] at p. 2.

Hughes characterizes the Government's disclosure as ambiguous and has requested that the Government provide "[the C.I.'s] payment logs from Greenville Police Department, dates of payments, and for any requests [the C.I.] has made to Greenville Police Department, FBI Agent Chisholm or the United States Attorney's Office." *Id*. The Government has refused to provide the requested information, arguing that the same exceeds the scope of discovery to which Hughes is entitled. This Motion [30] followed.

*Standard*

Pursuant to the Federal Rules of Criminal Procedure, the Government must permit a criminal defendant to inspect and copy any document or tangible item that "is material to preparing the defense[.]" FED. R. CRIM. P. 16(a)(1)(E). "Evidence is considered material to the defense if pretrial disclosure of the evidence would allow 'the defendant significantly to alter the quantum or proof in his favor.'" *United States v. Hesson*, 2015 WL 8273803, at *2 (E.D. La. Dec. 8, 2015) (quoting *United States v. Reeves*, 892 F.2d 1223, 1226 (5th Cir. 1990)).

"*Brady* and *Giglio* hold that the Constitution forbids the Government from suppressing evidence favorable to the accused or useful to the defense for impeachment of witnesses who testify against the accused." *United States v. Holley*, 23 F.3d 902, 914 (5th Cir. 1994) (citing *United States v. Williams*, 998 F.2d 258, 269 & n. 25 (5th Cir. 1993)).

*Analysis and Discussion*

As noted above, Hughes is dissatisfied with the information that the Government has provided in discovery regarding the C.I.'s past cooperation with the Greenville Police Department. In his Motion [30], Hughes specifically requests that the Government be required to disclose the following categories of information:

    (1)  Specific information as to the nature and dates of the infractions that were "worked off";

    (2)    Dates and amounts of renumeration to the [C.I.];

    (3)    Any other benefits conferred directly or indirectly to [the C.I.];

    (4)    Whether any other agencies other than Greenville Police Department have conferred any benefits to [the C.I.] and specifics;

    (5)    Names of the defendants, jurisdictions and case numbers of the successful convictions based on [the C.I.'s] cooperation;

    (6)    The dates and nature of requests [the C.I.] has made to Greenville Police Department, the FBI, and/or United States Attorney's Office from January 1, 2023 to the present;

    (7)    A breakdown of what the $4,998.06 is for.

[30] at p. 3-4.

In essence, Hughes' position is that, without this information, his counsel will be unable to effectively cross-examine the C.I.

In its Response [33], the Government addresses many of Hughes' concerns. Though relatively lengthy, the Court finds it appropriate to set forth a large portion of the Government's response:

> **(a) Specific information as to nature and dates of the infractions that were "worked off"**
>
> The government informed the defendant that the victim agreed to work as a confidential informant initially to work off citations. The government represents that these were tickets owed to the City of Greenville and upon information and belief, were traffic related. The defendant raises questions of whether any initial citations were drug related or crimes of dishonesty. The government provided the defendant in its initial disclosure a copy of the victim's NCIC reflecting his criminal history. Any known drug related offense or crime of dishonesty would be reflected.

> The government is not aware of any other offense that is not memorialized in the disclosure.

**(b)** **"Any other benefits conferred directly or indirectly to [the CI]"**

> The government has fulfilled its discovery obligations as related to benefits received by the victim as a CI or otherwise. There is no known benefit to disclose.

**(c)** **"Whether any other agencies other than Greenville Police Department have conferred any benefits to [the CI] and specifics"**

> Upon information and belief, the victim has not served as an informant for any other agency and therefore, has received no other benefit from another law enforcement agency. As described throughout, the victim did receive emergency assistance funds from the U.S. Attorney's Office. The victim further testified at a trial proceeding in the United States District Court and therefore, a check issued to the defendant [sic] related to fees pursuant to Title 28, United States Code Section 1821.

**(d)** **"Names of the defendants, jurisdictions and case numbers of the successful convictions based on the CI's cooperation"**

> For the same reasons discussed supra, the government objects to providing case specifics involving the CI. The government will not attempt to bolster the victim's testimony at trial by specifying the particulars of any successful case based on his cooperation and the defendant has sufficient information to effectively demonstrate the victim's potential bias to a jury.

**(e)** **"A breakdown of what the $4,998.06 is for."**

> The total amount provided to the victim by the government through the Department of Justice's Emergency Witness Assistance Program constitutes funds for relocation. The government's initial disclosure informed the defendant that the funds were used to move/house the victim due to his relocation for protection. Specifically, the amount constitutes funds for two 30-day assistance requests made pursuant to the process described herein. Both requests

5

> resulted in the following allocations: lodging ($100/day for 29 days); per diem ($30/day for 29 days); ATM fees ($3); and a cash advance ($12).

[33] at p. 4-6.

In the Court's view, the Government's response adequately addresses many, if not most, of the concerns Hughes raised in his Motion [30]. However, the issue of Hughes' request for disclosure of the payment logs remains an issue of contention.

For its part, the Government contends that "there is no requirement under Rule 16, *Giglio*, *Brady*, or any case law that the government provide the actual receipts to defense counsel. Instead, the government is only required to provide notice that the CI/witness received monetary compensation for the work as a CI." [33] at p. 3-4. In other words, the Government avers that Hughes already has in his possession sufficient information to cross-examine the C.I. The Government additionally notes that providing written documents regarding every person from whom the C.I. has purchased drugs will only serve to increase the threats and potential harm that the C.I. might suffer as a result of his cooperation. In his Reply [34], Hughes cites the Department of Justice Policy regarding the duties of prosecutors associated with the review of files from investigative agencies.

In analyzing this issue, the Court reverts to the Government's overarching obligation of disclosure. As emphasized above, the Government must permit Hughes to inspect and copy any document that "is material to preparing the defense[.]" FED. R. CRIM. P. 16(a)(1)(E). A document meets this threshold if its disclosure would allow "the defendant significantly to alter the quantum or proof in his favor." *Hesson*, 2015 WL 8273803 at *2 (E.D. La. Dec. 8, 2015) (citations omitted).

The Court finds that the requested documents do not meet this threshold. Hughes is undoubtedly aware that the C.I. has worked for the Greenville Police Department, that the C.I. received compensation—both financially and otherwise—for doing so, and the number of arrests

that have culminated as a result of the C.I.'s cooperation. Hughes has also been made aware of the date when the C.I. entered into a cooperation agreement with the Greenville Police Department. Hughes will certainly be given substantial leeway to question the C.I. about these issues—all of which potentially relate to his credibility. However, the Court agrees with the Government that the need to know the names of the specific individuals against whom the C.I. has testified is unnecessary for Hughes to adequately prepare a defense for trial. In other words, these documents are not "material to preparing the defense." FED. R. CRIM. P. 16(a)(1)(E).[1] This is particularly so in light of the safety risks inherit in providing such information—a concern this Court takes seriously.

In reaching this conclusion, the Court also notes that Hughes' request is not narrowly tailored in any way. For example, he simply requests *all* payment logs and does not draw any connection between any of the C.I.'s past dealings and the present case. He simply avers that he needs all payment logs in order to undermine the C.I.'s credibility at trial. The Court sees this argument as a stretch.

Furthermore, as noted above, Hughes cites the DOJ Policy related to the prosecution's duties associated with review of investigative files. Among other provisions, Hughes emphasizes the following language from that Policy:

> Confidential informant (CI)/ Witness (CW)/ Human Source (CHS)/ Source (CS) Files:
>
> The credibility of cooperating witnesses or informants will always be at issue if they testify during a trial. Therefore, prosecutors are entitled to access to the agency file for each testifying CI, CW, CHS, or CS. Those files should be reviewed for discoverable information and copies made of relevant portions for discovery purposes. The entire informant/source file, not just the portion relating to the current case, including all proffer, immunity and other agreements,

---

[1] Notably, Hughes cites no case law directly on point to indicate that such documentation is subject to disclosure.

7

>   validation assessment, payment information, and other potential witness impeachment information should be included within this review.

[35], Ex. 1 at p. 5.

Although it appreciates Hughes' reference to the DOJ Policy, the Court finds that it misses the mark. By its own terms, the Policy places a duty on the prosecution to review the applicable files for discoverable information. The Court is unaware of any allegation that the Government has not done so here. In fact, it seems as though the Government has complied with its duty and provided certain discoverable information contained in the investigative file—namely, the cooperation agreement between the C.I. and the Greenville Police Department.[2]

Rather than its duty to review the investigative agency's file, the Government's opposition to the request is based upon the specific information—the payment logs—not being discoverable. The Court sees nothing in the Policy that expands the scope of discoverable information. The DOJ Policy does not, in the Court's view, render the payment logs discoverable.

Having concluded that the payment logs are not subject to disclosure, the Court feels compelled to provide two important caveats.

The first concerns the C.I.'s testimony at trial. The Court's ruling as to disclosure is dependent upon the C.I. providing truthful information as to his past cooperation when testifying in this case. Should the C.I., for instance, deny having previously cooperated with the Greenville Police Department—or testify in any way inconsistent with the representations that the Government has made in its Response [33]—the Court will take appropriate steps to rectify the issue, which may, among other potential remedies, include ordering the disclosure of the payment logs.

---

[2] This agreement is specifically referenced in the discovery letter attached to the Government's Response [33]. *See* [33], Ex. 1.

The second caveat involves Hughes' concern that the Government will, after the C.I.'s cross-examination, "attempt to bolster or rehabilitate [the C.I.'s] credibility based on the government's assertion that [the C.I.'s] cooperation has led to the arrests of approximately 30 defendants and the successful prosecution of an unknown number of defendants." [30] at p. 6. The Court is cognizant of this concern and will not permit the Government to bolster the C.I.'s credibility in this manner. This ruling is not limited solely to direct or re-direct examination of the C.I. but shall also extend to the testimony of other trial witnesses.

*Conclusion*

For the reasons set forth above, Hughes' Motion to Compel [30] is DENIED. However, the Court will enforce the limitations outlined herein.

SO ORDERED, this the 22nd day of August, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE